UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELIZABETH S. SANCHEZ,
                Plaintiff,

-v-

NEW YORK CITY DEPARTMENT OF EDUCATION,
                Defendant.

23-CV-11156 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Elizabeth Sanchez brings this action against the New York City Department of Education ("DOE"), alleging that the treatment she experienced from administrators at Edward J. Collins Elementary School after she injured her knee violated Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12102, *et seq.*; the Family Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601, *et seq.*; the New York State Human Rights Law (NYSHRL), N.Y. Exec. L. §§ 290, *et seq.*; and the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code, §§ 8-101, *et seq.*

Before the Court is the DOE's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is granted.

I.     **Background**

    A.     **Factual Background**

Unless otherwise noted, the facts are drawn from Sanchez's complaint (ECF No. 1 ("Compl.")) and her brief in opposition to the DOE's motion to dismiss (ECF No. 18 ("Opp."))[1]

---

[1] "A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d

and are presumed true for the purpose of resolving the motion to dismiss. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 76 (2d Cir. 2015).

Elizabeth Sanchez is a second-grade teacher at Edward J. Collins Elementary School (also called "PS 146X"). (*See* Compl. at 40.) At the time of commencing this action, she had been employed by the DOE for twelve years. (Opp. at 10.)

### 1. Sanchez's Injury and PS146X's Response

Sanchez was on medical leave following a knee injury and subsequent surgery from September 13, 2021, to May 9, 2022. (*Id.* at 2.) On September 15, 2022, after returning to her job for the new school year, Sanchez emailed Assistant Principal Jason Kovac and notified him that an MRI had shown "a new tear in [her] medial meniscus which will be treated with PT." (Compl. at 45.) Sanchez requested support from the school "with some of the tasks I am having trouble completing" due to her knee injury. (*Id.*) Sanchez's classroom is located on the second floor of PS 146X, a school that does not have elevators, making it "particularly challenging" for Sanchez to navigate her workplace. (*Id.* at 12; Opp. at 9.)

On September 28, 2022, Sanchez reinjured her knee, allegedly due to "[t]he physical strains that came from setting up a classroom and going up and down stairs." (Opp. at 2-3.) The following day, she emailed Kovac to let him know she would need assistance with escorting her students throughout the school; otherwise she would "not be able to come to work today." (Compl. at 32.) Kovac responded that he was "sure we can support in the areas you requested as of this moment. My concern is if we have absences or become short staffed at some point, I couldn't guarantee this support indefinitely." (*Id.*)

---

Cir. 2013). Because Sanchez is proceeding *pro se*, the Court will consider facts raised in her opposition to the motion to dismiss and attached exhibits.

PS 146X conducted a fire drill on October 27, 2022. (Opp. at 6.) Sanchez alleges that she had to go down the stairs on crutches "with a class of 20 students," and that she then "had to walk down the block and cross over the street with [her] class without any support." (*Id.* at 6-7.)

After Sanchez filed a formal request for a "reasonable accommodation" on October 20, 2022 (Compl. at 23 (capitalization altered)), the DOE approved her request on November 15, 2022, stating that through January 31, 2023, "Employee will get aide or paraprofessional to support her with students and movement on the stairs." (*Id.* at 24.) Sanchez began receiving the paraprofessional support on December 5, 2022, but Sanchez further alleges that there was a gap in this coverage from January 9, 2022 to January 13, 2022. (Opp. at 6.)

### 2. Disciplinary Letters

On September 14, 2022, Sanchez was visited by a PS 146X administrator and "give[n] feedback to fix things." (Compl. at 57.) The next day, in the same email to Kovac in which Sanchez mentioned her new knee injury, she began her message: "I was able to make a lot of progress in my room based on the feedback that was provided." (*Id.* at 45.)

On September 16, 2022, the day after Sanchez emailed Kovac about her knee injury, a PS 146X administrator observed Sanchez's classroom and subsequently submitted a "Summons to Disciplinary Letter due to classroom environment." (Opp. at 5.) Following this Summons, Sanchez met with Kovac on September 19, 2022, but she does not allege that any further disciplinary action was taken against her as a result of the meeting. (*Id.*)

After a few more classroom visits in September, Principal Ronald Laurent observed Sanchez's classroom on October 3, 2022 and sent her a follow-up email afterwards to report several issues with Sanchez's teaching. (Compl. at 46-47.) Laurent observed that Sanchez had failed to display the learning targets required for every lesson, and that her students did not seem to have a clear idea of what they were supposed to be taking away from Sanchez's instruction

3

that day. (*Id.*)

Throughout October, PS 146X administrators conducted several more classroom visits in Sanchez's class, and, after providing her with negative feedback about classroom management, Sanchez was given two more "Summons to Disciplinary Conference letters." (Compl. at 11, 50-51.) After receiving feedback from Kovac by email, Sanchez replied using a tone that the administrators told her was inappropriate. (Compl. at 18, 50, 71.) However, none of these incidents resulted in a disciplinary letter being placed in Sanchez's professional file. (*Id.* at 71.)

After Sanchez received another Summons to Disciplinary Conference letter "to discuss failure to comply with school policy around cell phone use and lesson planning," Laurent placed a disciplinary letter in Sanchez's file on November 4, 2022. (*Id.* at 36, 40-41.) This letter stated that Sanchez was on her mobile phone while she was supposed to be teaching and that when the principal asked her to produce a physical copy of lesson plans, as is required by school policy, she was unable to do so. (*Id.* at 40-41.)

Two days after this letter was filed, Sanchez requested a Monday and Tuesday off in December for vacation. (*Id.* at 37.) However, Laurent denied her request, stating: "Dates are back to back following a weekend. Please choose other dates to review for Approval." (*Id.*) Sanchez does not allege that she requested different days off after receiving this message.

On December 7, 2022, Kovac placed a second disciplinary letter in Sanchez's professional file. (*Id.* at 72-73.) Kovac noted that Sanchez had failed to abide by a deadline for mandatory reports on progress in her classroom and she had she failed to adequately communicate the reason for this delay. (*Id.*)

Sanchez has not alleged that any further disciplinary action was taken after either of these letters were filed.

B.     **Procedural History**

Sanchez commenced this action on December 21, 2023. (Compl.) The DOE moved to dismiss on June 4, 2024. (ECF No. 14.) Sanchez opposed the motion on September 4, 2024 (Opp.), and the DOE replied in support of their motion on October 13, 2024 (ECF No. 23).

## II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Such a claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, the Court must accept as true all factual allegations in the complaint, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Sanchez is litigating her case *pro se*. "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). As such, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks omitted). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## III.    Discussion

The DOE has moved to dismiss all of Sanchez's claims, arguing that she has failed to adequately state a claim for the federal, state, and local claims; that she failed to file a notice

required by state and local law human rights law; and that several of Sanchez's claims are time-barred.

The Court agrees that Sanchez fails to state a claim for her federal law claims and that she did not file the mandatory notice to bring claims under the NYSHRL and NYCRL.[2]

### A.     ADA Claims

Sanchez asserts three theories of liability under the ADA: that school administrators (1) discriminated against her on the basis of her knee injury, (2) created a hostile environment due to her injury, and (3) retaliated against her after she asked for reasonable accommodations. (*See* Compl. at 5.)

#### 1.     Discrimination

The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(1)(A). For a plaintiff to state an ADA discrimination claim, she must plausibly allege that: "(1) the employer is subject to the ADA, (2) the employee is disabled or is perceived to be disabled as defined by the ADA, (3) the employee is qualified to perform the essential functions of the job, with or without reasonable accommodations, and (4) the employee suffers an adverse employment action because of his disability." *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024); *see also Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020).

Though the DOE does not challenge the first three prongs of this *prima facie* test, it argues that Sanchez has failed to identify an adverse employment action that resulted from her

---

[2] Because Sanchez's claims fail on alternate grounds, the Court need not, and does not, reach the issue of the timeliness of her claims.

injury and, alternatively, that she has not met her burden of raising the inference that any action taken against her was because of her disability. (ECF No. 14-1 ("Mem.") at 16-18.)

"To qualify as an adverse employment action, the employer's action toward the plaintiff must be materially adverse with respect to the terms and conditions of employment. It must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (cleaned up). Sanchez proffers two different kinds of adverse employment actions: (1) that she was denied two days of vacation time (Opp. at 7), and (2) that school administrators issued Sanchez a series of professional reprimands, culminating in two disciplinary letters being placed into her professional file (*id.* at 10).

Neither of these actions rises to the level of an "adverse employment action" required for liability to attach under the ADA. Courts in this Circuit have consistently held that a single denial of proposed vacation days is not an adverse employment action. *See, e.g.*, *Allen v. A.R.E.B.A. Casriel, Inc.*, No. 15-CV-9965, 2017 WL 4046127, at *13 (S.D.N.Y. Sept. 12, 2017) (holding that two denials of vacation time and personal time off were "'mere inconvenience[s]' that do not rise to the level of adverse employment actions" (quoting *Chukwuka v. City of N.Y.*, 795 F.Supp.2d 256, 261 (S.D.N.Y. 2011))); *Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405, 418-19 (S.D.N.Y. 2018) (holding the same for three denials of vacation time); *see also Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) ("[I]t is unlikely that these workplaces changes [including a single denial of vacation time] . . . would count as actionable adverse actions."). After Kovac rejected Sanchez's vacation request because her "[d]ates are back to back following a weekend," Sanchez does not allege that she requested different days off. (Compl. at 37.) Nor does she allege that she was completely barred from taking vacation

days throughout the year. Thus, her sole instance of a vacation denial, on its own, cannot rise to the level of an adverse employment action.

Neither do the reprimands Sanchez received, even when coupled with the two disciplinary letters filed in her professional record, rise to an actionable level. "[A] negative performance review, without any showing of a negative ramification, cannot constitute an adverse employment action." *Natofsky*, 921 F.3d at 352; *see also Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 72 (2d Cir. 2019) ("Harsh reprimands do not rise to the level of an adverse employment action where there is no tangible effect on employment."). Importantly, Sanchez has not alleged any actions that occurred after the disciplinary letters were put in her file. And though she argues that the two letters "will likely be reviewed by future employers, unfairly tarnishing the Plaintiff's professional reputation and hindering career prospects" (Opp. at 10), until she identifies any action taken against her, rather than just the possibility of future injury, the letters do not constitute adverse actions themselves for purposes of stating a discrimination claim. *See Fairbrother v. Morrison*, 412 F.3d 39, 56-57 (2d Cir. 2005) (collecting cases and holding that a negative performance evaluation and written memo are not adverse employment actions without evidence that they "altered . . . compensation, benefits, or job title"), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see also Sosa v. N.Y.C. Dep't of Educ.*, 819 F. App'x 30, 34 (2d Cir. 2020) (summary order) (holding that a formal disciplinary letter issued to a teacher "informing her that due to her one month absence, she was considered [away without leave] and in jeopardy of losing her position," did not qualify as an adverse employment action "because, as the record shows, no negative consequences resulted" (cleaned up)); *Owens v. N.Y.C. Dep't of Educ.*, No. 17-CV-519 , 2021 WL 3862974, at

\*11 (S.D.N.Y. Aug. 30, 2021), *aff'd*, No. 21-CV-2875, 2022 WL 17844279 (2d Cir. Dec. 22, 2022) (same).

Because Sanchez has failed to adequately allege that she experienced an adverse employment action that would trigger liability under the ADA, she has failed to state a claim for discrimination.

### 2. Hostile Work Environment

The DOE next moves to dismiss Sanchez's hostile work environment claim, arguing that the disciplinary actions and denial of vacation did not rise to the level of severe or pervasive harassment. (Mem. at 20-21.)

A Plaintiff bringing a hostile work environment claim pursuant to the ADA must show "(1) that the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer. Although the victim must subjectively perceive the conduct as abusive, the misconduct shown also must be severe or pervasive enough to create an objectively hostile or abusive work environment." *Fox*, 918 F.3d at 74 (cleaned up). In determining whether an environment rises to the level of objectively "severe or pervasive," "[c]ourts look to the totality of the circumstances . . . including proof of 'the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Sanchez has alleged no such environment at PS 146X. Though she complains that she was subjected to "excessive scrutiny" of her teaching and planning which caused her "severe emotional distress . . . anxiety and stress-related symptoms" (Opp. at 10), it is not objectively humiliating, offensive, or unreasonable for school administrators to sit in on teachers' classrooms

9

to observe their teaching methods, even if they do so frequently. Nor does it create an objectively hostile and abusive workplace when administrators demand copies of a teacher's lesson plan. Thus, while Sanchez may have developed anxiety and stress symptoms from this administrative oversight, she has not alleged facts so severe or pervasive that they trigger liability under the ADA.

Because Sanchez fails to meet a necessary requirement for a hostile work environment claim pursuant to the ADA, her claim is dismissed.

### 3. Retaliation

The DOE moves to dismiss Sanchez's ADA retaliation claim, arguing that Sanchez fails to allege any facts connecting her denial of vacation and the disciplinary actions taken against her to her official request to the DOE for accommodations. (Mem. at 23-24.)

"It is a violation of the ADA for an employer to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter." *Sharikov*, 103 F.4th at 170 (quotation marks omitted). To survive a motion to dismiss, a plaintiff must establish that "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023).

The Second Circuit has held that "requests for an accommodation" qualify as protected activity under the ADA. *Id.* at 126. And the DOE does not dispute that PS 146X's administrators were aware of Sanchez's requests for assistance with managing her class as of Sanchez's September 29, 2022 email asking assistant principal Kovac for help escorting her students down stairs (*see* Compl. at 32), or that the administrative reviews of Sanchez qualify as

10

adverse actions for the purposes of a retaliation claim.[3] Thus, the only remaining question is whether Sanchez has adequately alleged a causal connection between her requests for accommodation and the administrative actions taken against her.

A causal connection can be shown "either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Lees v. Graduate Ctr., City Univ. of N.Y.*, 696 F. App'x 530, 531 (2d Cir. 2017) (summary order) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

Sanchez has "alleged no direct evidence of retaliatory animus," so she has not established direct causation. *Cf. id.* And for indirect evidence, all Sanchez has alleged is temporal proximity between her informal accommodation request to Kovac and the adverse actions. (*See* Opp. at 5.) However, Sanchez's allegations and the documents attached to her complaint do not support such a causal connection. Sanchez first identified that she was under administrative review in her classroom on September 14, 2022, when she stated in an email that an administrator had met with her and gave her "feedback to fix things." (Compl. at 57.) The next day, in the same email where she first reported her injury to assistant principal Kovac, Sanchez again acknowledged this administrative scrutiny, stating: "I was able to make a lot of progress in my room based on the feedback that was provided." (*Id.* at 45.) Sanchez then received her first Summons to

---

[3] While the Court dismissed Sanchez's ADA discrimination claim because she had failed to allege adequate adverse employment actions, the Second Circuit has held that a retaliation claim "covers a broader range of conduct than does the adverse-action standard for claims of discrimination." *See Vega*, 801 F.3d at 90 (holding the same in a Title VII case); *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999) ("[I]t is appropriate to apply the framework used in analyzing retaliation claims under Title VII in analyzing a claim of retaliation under the ADA." (quotation marks omitted)).

Disciplinary Conference letter on September 19, 2022. (*Id.* at 11.) However, it was not until September 29, 2022 that Sanchez first asked for reasonable accommodations in conducting the daily tasks required to fulfill her job responsibilities. (*Id.* at 32.)

On its own, the timeline Sanchez alleges does not sufficiently connect the dots to support a plausible allegation of indirect causation. Because her disciplinary troubles began on September 14, 2022 or earlier, but she did not request accommodations until two weeks later, causation cannot be inferred. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); *Lees*, 696 F. App'x at 531 (same);[4] *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 722 (S.D.N.Y. 2020) ("It is well-settled that an adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion before a plaintiff engaged in protected activity. In essence, if an employer's conduct before and after an employee complaint is consistent, the post-complaint conduct is not retaliatory." (cleaned up)).

The DOE's motion to dismiss Sanchez's retaliation claim is thus granted.

### B. FMLA Interference

Sanchez's final federal claim is for FMLA interference. The DOE moves to dismiss this claim, arguing that Sanchez failed to ever request FMLA leave for her injury. (Mem. at 25.)

---

[4] While these two Second Circuit cases involved significantly more time in between the commencement of disciplinary actions against a plaintiff and the request for accommodations (i.e., the protected activity), the rationale applies equally here. Absent any other evidence of discriminatory animus, there cannot be an inference of causation when the disciplinary actions at issue began before the protected activity occurred.

"[T]o prevail on a claim of interference with her FMLA rights, a plaintiff must establish: 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Cf. Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).

Sanchez alleges that she "requested the FMLA medical leave on October 28, 2022." (Opp. at 16.) However, "the UFT [told Sanchez] that she was [in]eligible for FMLA as she had not worked 1,250 hours during the 12 months before the start of FMLA leave requested." (*Id.*) Importantly, Sanchez does not allege that she asked the DOE for FMLA leave or gave her employer any indication of her intent to take such leave. (*See id.*) Telling her union that she would like to request FMLA leave did not give "notice to the defendant of her intention to take leave." *Graziadio*, 817 F.3d at 424.

Sanchez thus fails to plead a necessary requirement to state a claim for FMLA retaliation, and the DOE's motion to dismiss is granted.

### C.     NYSHRL and NYCHRL Claims

In addition to her federal claims, Sanchez alleges violations of the NYSHRL and NYCHRL for the same conduct detailed above. (Opp. at 14-15.) However, the DOE is correct that Sanchez failed to provide proper notice of her claims within the timeframe required by New York Education Law Section 3813(1). (*Cf.* Mem. at 14.)

New York Education Law provides, in relevant part:

> No action . . . for any cause whatever . . . involving the rights or interests of any district . . . shall be prosecuted or maintained against any school district [or] board of education, . . . unless it shall appear by and as an allegation in the complaint . . . that a written verified claim upon which such action . . . is founded

13

was presented to the governing body of said district or school within three months after the accrual of such claim.

N.Y. Educ. L. § 3813(1). "Therefore, to survive a motion to dismiss, the plaintiff must plead that she presented a written verified claim to the DOE's governing body within three months after her claim accrued." *Hall v. N.Y.C. Dep't of Educ.*, No. 23-CV-10385, 2024 WL 4979288, at *6 (S.D.N.Y. Dec. 3, 2024).

Sanchez, who does not allege that she provided the DOE any notice other than the filing of her complaint at least eleven months after the last of her stated claims accrued, "does not contest" that her NYSHRL and NYCHRL claims are "barred by failure to provide notice." (Opp. at 14 (capitalization altered).) Instead, she asks the Court to override the notice requirement in light of "equitable factors, such as the plaintiff's good faith . . . and [her] vulnerable position as an employee fearing retaliation." (*Id.* at 15.) Sanchez argues that she was "unaware of the specific requirements under Education Law to bring the compliant to the school board," and instead brought it to her union officials. (*Id.* at 14.) However, the Court has no such power to ignore state law, even if Sanchez's fairness argument were compelling. A lack of awareness of one's rights and reporting to the wrong authority ultimately do not weigh against faithfully applying Section 3813(1), a statue traditionally "construed strictly by New York state courts." *Ramsaroop v. Dep't of Educ. of N.Y.C.*, No. 20-CV-4947, 2022 WL 376029, at *9 (S.D.N.Y. Feb. 8, 2022) (quoting *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999)).

Sanchez's NYSHRL and NYCHRL claims are thus dismissed.

### D.   Leave to Replead

Sanchez is proceeding *pro se*, and the Second Circuit has warned that "[district courts] should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a

liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).  While Sanchez's NYSHRL and NYCHRL claims cannot be remedied by additional facts because nothing can cure the notice defect, Sanchez's ADA and FMLA claims could plausibly be valid with the addition of sufficient facts.  *See Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009) ("[W]e cannot rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." (cleaned up)).

For example, if Sanchez can add specific factual evidence of discriminatory animus, she may be able to plead retaliation pursuant to the ADA.  Likewise, if Sanchez can produce evidence that she applied for FMLA leave with the DOE, and not just her union, her FMLA interference claim may be valid.

Sanchez is therefore granted leave to replead her federal claims.

### IV.     Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.  Plaintiff is granted leave to file any amended complaint repleading her federal claims, provided that any such amended complaint shall be filed within 21 days of receiving a copy of this Opinion and Order.  If Plaintiff chooses not to file an amended complaint, she is directed to submit a letter so stating, in which case the Court will immediately enter final judgment, permitting an appeal to the Court of Appeals for the Second Circuit.

The Clerk of Court is directed to terminate the motion at Docket Number 14.

The Clerk of Court is further directed to mail a copy of this Opinion and Order to the *pro se* Plaintiff.

SO ORDERED.

Dated: February 18, 2025

_____
J. PAUL OETKEN
United States District Judge